IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LARRY DONNELL BROOKS,

        Plaintiff,

v.                                      No. 15-CV-564-pp

COMPLETE WAREHOUSE &
DISTRIBUTION LLC, JOHN ARCURI,
MIKE MILLER, RON MALVICK,
REBECCA VUCKOVIC, JIM HANSON, and
RONALD NEUMUTH,

        Defendants.

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR AN EXTENSION OF TIME (DKT. NO. 24), AND GRANTING DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT (DKT. NO. 22)**

The defendants have filed a motion to dismiss the plaintiff's case under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 22. In the event that the court does not think it appropriate to dismiss the case, the defendants ask the court to grant them summary judgment under Federal Rule of Civil Procedure 56. Id. After reviewing the motion, the court construes it as a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). The court will grant that motion, because the plaintiff's third amended complaint—his fourth in the course of this litigation—fails to state a claim for which relief can be granted and violates Civil Local Rules 10 and 15 and the court's May 31, 2016 order. The court also finds that granting the plaintiff an additional opportunity to plead his claims would be futile. Because the court will grant the defendants' motion under Rule

1

12(c), the court will deny as moot the defendants' motion for summary judgment.

## I.  BACKGROUND

### A.  Original Complaint

The plaintiff, representing himself, filed a complaint alleging that the defendants discriminated against him on the basis of race. Dkt. No. 1. The complaint named seven defendants: Complete Warehouse & Distribution, LLC; John Arcuri; Mike Miller; Ron Malvick; Rebecca Vuckovic; Jim Hanson; and Ronald Neumuth. Id.

In the complaint, the plaintiff alleged that he'd started working at Complete Warehouse as a truck driver in November 2007. Id. at 3. He alleges that in January 2008, another employee addressed him using a racial slur, in front of defendant Malvick (a part-owner and supervisor). When the plaintiff protested, Malvick said the other employee was "only joking." Id. The next day, the plaintiff complained to Malvick, telling him that the slur was offensive, that he wanted the behavior stopped, and that Malvick was racist for allowing it to occur. Malvick responded that he had "black grandchildren." Id.

Other events followed—another employee made racist remarks about President Obama in front of the plaintiff; the original employee continued to use the racial slur; other employees used racist language in front of and around the plaintiff. Id. The plaintiff alleges that the environment worsened over time. Id. at 3-4. In June of 2008, two employees got into an altercation in front of the plaintiff, and one of them pulled out a pistol. Id. at 4. When the

2

plaintiff reported this incident to Malvick, Malvick stated that it probably wasn't a real gun. Id. Eventually, after further issues, the plaintiff alleges that Malvick ordered white employees to stop talking to the defendant, and began making truck assignments based on drivers' race. Id. The plaintiff also asserted that he received "harsh discipline" for an "uninvestigated incident," while white co-workers were not disciplined for "major infraction[s]." Id. at 4-5.

The plaintiff also alleged that in February 2009, he met with defendant Neumuth (the safety director) to discuss an accident, and realized that he knew Neumuth from the plaintiff's prior job. Id. at 5. The plaintiff "got a three day suspension and a company handbook." Id. He indicates that in contrast, white drivers were damaging their trucks, and receiving no discipline. Id. When the plaintiff came off suspension, he was not allowed to drive a truck, but was placed on part-time duty in the warehouse. Id. The plaintiff ended up complaining about this, and how he was treated differently than white employees and was subjected to continuing racist remarks, to defendant Miller, the company president. Id. By May 2009, the plaintiff claims, he was required to load his own freight before transporting it, while white employees had their freight loaded by warehouse workers. Id.

On May 19, 2009, defendant Neumuth "rubber stamp[ed] the company policy [illegible] suspending [the plaintiff], this time citing improper per-trip." Id. Again, white drivers were rolling their trucks due to failure to properly secure their loads, but not being disciplined. In June 2009, the plaintiff told Neumuth that he was going to court for a ticket he'd received while on duty.

3

When the plaintiff arrived at court, defendant Hanson met him on the courthouse steps and said he was there to fight the ticket. Hanson "plead no contest and paid the ticket." Id. On the way out of the courthouse, the plaintiff asked Hanson that he be "dispatch[ed]" from West Allis, and Hanson said "ok." Id. On June 4, 2009, however, Hanson terminated the plaintiff for the unauthorized use of government equipment. Id. The plaintiff challenged his termination with defendant Miller; Miller reiterated that the plaintiff was fired. Id.

The original complaint made no mention of defendant John Arcuri, and mentioned defendant Rebecca Vuckovic only to state that the plaintiff approached Malvick to "discuss" her on one occasion. Id. at 4. The complaint did not state any causes of action, or list any statutes under which the plaintiff was suing.

B.  First Amended Complaint

Two and a half months later, the plaintiff filed an amended complaint. Dkt. No. 7. This document was one page long. It stated that the plaintiff was asking the court to include one count of negligent failure to prevent racial harassment in the workplace; one count of negligence in response to racial harassment; one count of intentional infliction of emotional distress; one count of hostile work environment based on racial discrimination in violation of 42 U.S.C. §1981; one count of disparate treatment based on racial discrimination in violation of 42 U.S.C. §1981; one count of hostile work environment in violation of Title VII; and one count of disparate treatment in violation of Title

4

VII. Dkt. No. 7. (The plaintiff also asked the court to appoint a lawyer to represent him. Id.) This first amended complaint did not state any facts. Nor did it state against which defendants he was bringing which claims.

    C.    <u>Second Amended Complaint</u>

After the defendants filed their answer, the court held a scheduling conference, setting discovery deadlines, motions deadlines, and a trial date. Dkt. No. 15. About forty-five days later, the plaintiff filed a motion, asking the court to allow him to amend his complaint a second time. Dkt. No. 16. The motion stated that he wanted to amend the complaint "to include . . . Count One: retaliation; negligence failure to prevent retaliation from co-owner Ron Malvick and Rebecca Vuckovic. Count two: gross negligence and negligence in participation of retaliation in violation of Title VII based upon racial discrimination." Id.

The court granted the plaintiff's motion for leave to amend but, for several reasons, ordered the plaintiff to file a third amended complaint. Dkt. No. 17. The court found that the original complaint contained three pages of factual allegations, but did not state any causes of action. Id. at 2. In contrast, the court pointed out that the first and the second amended complaints listed of causes of action, but did not link the causes of action to any of the facts alleged in the original complaint. Id. Neither the first nor the second amended complaint alleged which defendants were involved in which of the causes of action. Id. The court found that "[i]t would be an insurmountable task for the defendants to figure out what to call which counts, which counts relate to

5

which defendants, and what actions the plaintiff believes that each defendant took that violated the law." Id. at 3.

The court gave the plaintiff specific instructions regarding how to prepare his third amended complaint. The order stated that the plaintiff "must list, in numerical order: (a) each cause of action he wants to bring; (b) the names of each defendant against whom he brings that particular cause of action; and (c) the particular facts that he believes show that that defendant (or those defendants) violated the law alleged in that cause of action." Id. Along with this order, the court provided the plaintiff with a clean, blank copy of the complaint form, as well as copies of his original, first amended and second amended complaints, in the hope that he could organize his third amended complaint so that "all of the plaintiff's factual allegations and claims will be set out in one document." Id. at 4.

The court vacated all of the deadlines it had set at the scheduling conference, indicating that after the plaintiff filed his third amended complaint, the court would set new dates. Id.

D. Third Amended Complaint

The plaintiff timely filed the third amended complaint. Dkt. No. 19. The defendants answered, denying all of the plaintiff's allegations. Dkt. No. 20. A couple of months later, they filed this motion to dismiss or, in the alternative, for summary judgment. Dkt. No. 22.

6

### E. Motion to Dismiss/Motion for Summary Judgment

In their brief supporting the motion to dismiss, the defendants argue that the plaintiff's third amended complaint violates Civil Local Rule 10, because the plaintiff failed to state his claims in numbered paragraphs limited to a single set of circumstances. Dkt. No. 23 at 13. They also argue that the third amended complaint violates Civil Local Rule 15, and the court's May 31, 2016 order, because it fails to describe the facts underlying the basis for the plaintiff's claims against each of the defendants, and repeatedly incorporates his prior insufficient pleading by reference (which the court admonished him not to do). Id. at 14. They also that the plaintiff did not state any viable claims against Rebecca Vuckovic, Jim Hanson or Complete Warehouse & Distribution. Id. at 12-13. Finally, they argue that the plaintiff failed to state claims upon which a federal court could grant relief (and thus ask for dismissal under Fed. R. Civ. P. 12(b)(6)). For example, the defendants argue that the plaintiff brought claims against individual defendants under Title VII, and argue that individual defendants "cannot be held liable under statute." Id. at 14. They argue that several of the causes of action he alleges don't exist, such as gross negligence in response to racial harassment, or "never imposed zero tolerance." Id. at 15.

In the alternative, the defendants ask the court to grant summary judgment in their favor. Id. at 15. They argue that the plaintiff did not exhaust his administrative remedies, because, while he filed a charge with the Equal Rights Division, that charge did not allege harassment—a claim the plaintiff makes several times in his third amended complaint. Id. at 18. They also argue

7

that any claims the plaintiff seeks to raise under Title VII and 42 U.S.C. §1981 are barred by the statute of limitations. Id. at 19. They argue that he has not proved any retaliation claims, id. at 20-23, and that he failed to show that Complete Warehouse discriminated against him, or fired him, based on race, id. at 23-27.

## II. DISCUSSION

### A. Motion for Extension of Time

The defendants filed the motion to dismiss/motion for summary judgment on September 12, 2016. Dkt. No. 22. On September 21, 2016, the defendants asked the court to give the plaintiff more time to respond to their motion, because they'd accidentally sent the motion to the plaintiff at the wrong address. Dkt. Nos. 28, 28-1. The court granted that request, and gave the plaintiff a deadline of October 21, 2016 to file his response. Dkt. No. 29.

On October 24, 2016, the plaintiff filed a motion for default and motion for default judgment. Dkt. No. 31. The court denied that motion, but again extended the plaintiff's deadline for responding to the motion to dismiss to December 2, 2016. Dkt. No. 33.

On December 6, 2016, the clerk's office received a motion from the defendant, asking the court to give him a bit more time to file his response. Dkt. No. 34. He explained that he'd tried to come downtown to file the response on December 2 (the due date), but between traffic and finding a parking place, he didn't arrive at the federal building until after it was locked. Id. The date on

8

that motion was December 2. Id. Along with the motion, the clerk's office received the plaintiff's response to the motion to dismiss. Dkt. No. 35.

The court will grant the plaintiff's motion; it is clear he made the effort to get his response filed on time, and the court received it only four days late. The court has considered the plaintiff's response in ruling on the defendants' motion.

B.   Standards of Review

Although the defendants captioned their motion as a motion to dismiss under Rule 12(b)(6), the court construes the motion as one for judgment on the pleadings under Rule 12(c), because they filed it after they had answered the complaint. See Lanigan v. Vill. of E. Hazel Crest, Ill., 110 F.3d 467, 470 n.2 (7th Cir. 1997). Courts apply the same standards of review when considering dismissal under either section of Rule 12. Adams v. Indianapolis, 742 F.3d 720, 727–28 (7th Cir. 2014) ("A motion for judgment on the pleadings under Rule 12(c) . . . is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6).")

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In the complaint, a plaintiff must include "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that

9

he is entitled to relief." Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008) (quoting Lang v. TCF Nat'l Bank, 249 F. App'x 464, 466 (7th Cir. 2007)). A plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678 (quotations omitted). On a Rule 12(b)(6) motion, "courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Silha v. ACT, Inc., 807 F.3d 169, 173 (7th Cir. 2015) (quotation omitted).

F.R.C.P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" The rule does not require detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). For a complaint to survive a Rule 12(b)(6) challenge, the plaintiff must give the defendant fair notice of what the claim is and the grounds upon which it rests. See Huri v. Office of the Chief Judge of the Cir. Ct. of Cook County, 804 F.3d 826, 832 (7th Cir. 2015). "Neither conclusory legal statements nor abstract recitations of the elements of a cause of action add to the notice that Rule 8 demands, so they do not help a complaint survive a Rule 12(b)(6) motion." Id.

F.R.C.P. 10(b) and this court's Civil Local Rule 10(a) provide that claims should be set out "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Rule 10(b) further provides, "[i]f doing so would promote clarity, each claim founded on a separate transaction or

10

occurrence . . . must be stated in a separate count or defense." "The primary purpose of [these rules] is to give defendants fair notice of the claims against them and the grounds supporting the claims." Stanard v. Nygren, 658 F.3d 792, 797 (7th Cir. 2011).

> C. The Third Amended Complaint Does Not Comply with the Court's Local Rules or the Court's Prior Order, and Fails to State a Claim for Which Relief May Be Granted.

The court has construed the third amended complaint liberally, both because Rule 12(b)(6) requires it to do so and because the plaintiff is representing himself. E.g., Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015) ("Because [the plaintiff's] complaint is *pro se,* we construe it liberally, holding it to a less stringent standard than formal pleadings drafted by lawyers.") (quotation omitted). Even so, despite the clear instructions that the court gave the plaintiff in its May 31, 2016 order, the plaintiff's third amended complaint consists of a "vague, confusing, and conclusory articulation of the factual and legal basis for the claim[s]," that fails to give the defendants adequate notice of his claims against them. Cincinnati Life Ins. Co. v. Beyrer, 722 F.3d 939, 946 (7th Cir. 2013) (quoting Stanard, 658 F.3d at 798). The third amended complaint is a list of legal conclusions and causes of action which the plaintiff has not supported by facts that plausibly show that the defendants are liable for the conduct alleged. It is not a short and plain statement of the plaintiff's claims, (as required by Rule 8); it does not distinguish the factual circumstances supporting each separate claim (as required by Rule 10 and Civil Local Rule 10); it cross-references the plaintiff's prior complaints (in

11

violation of Civil Local Rule 15 and the court's prior order); and it does not give each defendant notice of the factual basis for the claims against them.

In his response brief, the plaintiff did not address the defendants' argument that the third amended complaint violates Civil Local Rules 10 and 15 and the court's prior order. See generally, Dkt. No. 35. Instead, he reiterated the allegations from his administrative discrimination charge, and added other factual allegations, which the defendants construed as the plaintiff's Civil Local

The plaintiff has not disputed the defendants' allegation that the third amended complaint violates Civil Local Rules 10 and 15 and the court's May 31, 2016 order. For this reason alone, the court dismisses the case.

In addition, though, the third amended complaint fails to state a claim for which a federal court may grant relief. The plaintiff mentions Title VII several times in the third amended complaint. Title VII makes it illegal for "an employer" to discriminate against an individual based on race. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 63 (1986). It does not impose individual liability on agents of the employer. Williams v. Banning, 72 F.3d 552, 554-555 (7th Cir. 1995). Defendant Neumuth (the safety director), as well as Vuckovic, Hanson and Arcuri, were agents of Complete Warehouse, not the plaintiff's employers. They are not liable under Title VII even if they did something inappropriate, they cannot be held liable under Title VII.

Despite filing four complaints, the plaintiff has not made any claims identifying what these, what actions they took that violated a law. None of the claims identify defendant Complete Warehouse & Distribution, LLC as the

12

wrong-doer. The third amended complaint is the only one that mentions Arcuri; it asserts that Arcuri was "gross negligence and negligence in response to racial harassment," and "negligence in the participation of retaliation in violation of Title VII based upon racial discrimination." Dkt. No. 19 at 3. It also mentions Arcuri in relation to other claims. This is the first complaint in which the plaintiff identifies Arcuri's role—vice president—but in *none* of the complaints (including the third amended one) does he say what Arcuri actually *did*. The third amended complaint alleges that defendant Hanson "racially targeted and stalked" him on June 3, 2009. Id. at 3. But the very spare facts the plaintiff alleged in his original claim show only that Hanson showed up at the courthouse and, it appears, helped the plaintiff resolve a traffic ticket, and that Hanson was the person who fired him (for, as the plaintiff himself says, misuse of company equipment). Dkt. No. 1 at 5. The third amended complaint identifies defendant Vuckovic as the dispatcher for the drivers, dkt. no. 19 at 3, but *none* of the complaints explain what the plaintiff thinks that Vuckovic did to him.

With regard to Malvic and Miller, the plaintiff's original complaint (not the third amended one) asserts that they failed to intervene when other employees subjected him to harassment. These claims fall short of making out a *prima facie* case for hostile work environment; the defendants' uncontested proposed statements of material fact do not support the plaintiff's allegations. See Dkt. Nos. 24, 25. It appears that the plaintiff did not raise hostile work environment claims in his ERD charge. The federal claims also appear to be

13

barred by the statutes of limitation, as the defendants discuss in their opening brief. Dkt. No. 23 at 19-21. The plaintiff did not dispute the argument that his federal claims are time-barred. Without federal claims, any state-law allegations the plaintiff was attempting to bring, such as negligence and intentional infliction of emotional distress, cannot stand in federal court. For all of these reasons, the plaintiff has failed to state claims upon which this court can grant relief.

The court will not give the plaintiff another opportunity to file a complaint that complies with Federal Rules of Civil Procedure 8(a)(2), 10(b), and 15, the court's corresponding Civil Local Rules, and the specific instructions the court provided in its May 31, 2016 order. The case has been pending for twenty months. The plaintiff now has had four chances to plead a complaint that conforms to the rules, and has failed to do so. Because the plaintiff did not have a lawyer, the court's May 31, 2016 order gave the plaintiff clear instructions to follow when drafting his third amended complaint, after the court found that the defendants could not be expected to respond to the plaintiff's second amended complaint. Still, the plaintiff failed to succinctly state the causes of action he wanted to bring, the defendant(s) against whom he brought each particular cause of action, and the facts that he believed showed that that defendant was liable for each that cause of action. Under these circumstances, it would be futile to instruct the plaintiff to follow an order he already has violated and grant him yet another opportunity to amend his complaint.

### III. CONCLUSION

The court **GRANTS** the plaintiff's motion for an extension of time to file his response to the defendants' motion. Dkt. No. 34. The court **ORDERS** that the plaintiff's December 6, 2016 response was timely filed.

The third amended complaint fails to state a claim for which relief can be granted, and fails to comply with Federal Rules of Civil Procedure 8, 10, and 15, Civil Local Rules 10 and 15, and this court's May 31, 2016 order. Based on the plaintiff's failure to follow the court's prior instructions, it would be futile to grant him another opportunity to amend his complaint.

The court **GRANTS** the defendants' motion to dismiss (construed as a motion for judgment on the pleadings under Rule 12(c)), dkt. no. 22; **DENIES AS MOOT** the defendants' for summary judgment, dkt. no. 22; and **DISMISSES** the plaintiff's complaint in its entirety. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **thirty days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief

from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight days** of the entry of judgment. The court cannot extend this deadline. <u>See</u> Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) generally must be filed within a reasonable time, and under subsections (1), (2), and (3) no more than one year after the entry of the judgment. The court cannot extend this deadline. <u>See</u> Federal Rule of Civil Procedure 6(b)(2).

Dated in Milwaukee, Wisconsin this 12th day of January, 2017.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge

16

Case 2:15-cv-00564-PP   Filed 01/12/17   Page 16 of 16   Document 41